**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CIELO JEAN GIBSON, JESSICA BURCIAGA, PAOLA CANAS, URSULA MAYES, JESSA HINTON, JOANNA KRUPA, SARA UNDERWOOD, BRITTANY WILCOX, JESSICA ROCKWELL, SHEENA LEE WEBER, TALBERKOVITCH, TIFFANY SELBY, VIDA GUERRA, ALICIA WHITTEN, ANYA MONZIKOVA, ASHLEY VICKERS, CARISSA ROSARIO, CORA SKINNER, EVA PEPAJ, IRINA VORONINA, and JAMILLETTE GAXIOLA,

                  Plaintiffs,

   - against -

SCE GROUP, INC., d/b/a SIN CITY CABARET, 21 GROUP, INC., d/b/a SHOW PALACE GENTLEMAN'S CLUB, and LAMBROS MOUMOURIS,

                  Defendants.

Case No. 15-cv-8168(ER)(DCF)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

---

THE CASAS LAW FIRM, P.C.

**THE CASAS LAW FIRM, P.C.**
John V. Golaszewski, Esq.
1750 Broadway, 15th Floor
New York, New York
T: 646.872.3178
F: 855.220.9626

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

STATEMENT OF UNDISPUTED FACTS ................................................................................. 1

ARGUMENT ....................................................................................................................... 2

  I.   STANDARD ON SUMMARY JUDGMENT ................................................................. 2

  II.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT I OF THE
  COMPLAINT FOR VIOLATION OF THE LANHAM ACT .................................................. 3

    A.   There is No Issue of Material Fact as to Whether False or Misleading Representations
    of Fact Were Made in the Advertisements ............................................................... 4

    B.   There is No Issue of Material Fact as to Whether the Advertisements Were Used in
    Commerce, and in Connection With Goods and Services ....................................... 7

    C.   There is No Issue of Material Fact as to Whether the Advertisements Were Likely to
    Cause Consumer Confusion .................................................................................... 7

  III.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT II OF THE
  COMPLAINT FOR VIOLATION OF N.Y. CIVIL RIGHTS LAW §§ 50-51 ........................ 13

  IV.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT III OF THE
  COMPLAINT FOR VIOLATION OF NEW YORK'S DECPTIVE TRADE PRACTICE
  ACT, N.Y. G.B.L. § 349 ...................................................................................... 13

  V.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT IV FOR
  DEFAMATION ................................................................................................... 17

CONCLUSION ................................................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Aghaeepour v. Northern Leasing Sys., Inc.,* 14 Civ. 5449(NSR),
      2015 WL 7758894 (S.D.N.Y. Dec. 1, 2015) ................................................................ 14

*Albert v. Apex Fitness, Inc.*, No. 97-cv-1151(LAK), 1997 WL 323899
      (S.D.N.Y. Jun 13, 1999) ............................................................................................ 4

*Allen v. Nat'l Video, Inc.*, 610 F.Supp. 612, 626 (S.D.N.Y. 1985) ........................................... 4, 6

*Arnold v. Treadwell*, 642 F.Supp.2d 723, 734 (E.D. Mich. 2009) ................................................ 9

*Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA, Inc.* 3 N.Y. 3d 200 (2004) ............. 4

*Brinkley v. Casablancas*, 80 A.D.2d 428 (1st Dep't 1981) ........................................................ 13

*Burck v. Mars*, 571 F.Supp.2d 446 (S.D.N.Y. 2008) ...................................................................... 4

*Celle v. Filipino Reporters Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000) .................................. 15, 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 2

*CJ Products, LLC v. Snuggly Plushez, LLC*, 809 F.Supp.2d 127 (E.D.N.Y. 2011) ..................... 7

*Condit v. Star Editorial, Inc.*, 259 F.Supp.2d 1046 (E.D. Cal. 2003) .......................................... 9

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S.23, 28 (2003) ............................... 3

*Dillon v. City of New York*, 261 A.D.2d 34, 37 (1st Dep't 1999) ............................................... 15

*Estate of James Oscar Smith, et ano. v. Cash Money Records, Inc.* 14-cv-2703, 2018 WL
      2224993 (S.D.N.Y. May 15, 2018) ............................................................................ 8

*Famous Horse, Inc. v. 5th Ave. Photo, Inc.*, 624 F.3d 106, 109 (2d Cir. 2010) ........................... 4

*Fischer v. Forrest*, 286 F.Supp.3d 590, 612 (S.D.N.Y. 2018) ..................................................... 9

*Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113-14 (2d Cir. 1988) .......... 11

*Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (2002) ..................................................... 14

*Int'l Information Sys. Sec. Certification Consortium, Inc. v. Security University,*
      *LLC*, 823 F.3d 153 (2d Cir. 2016). ............................................................................ 4

*Jackson v. Odenat*, 9 F.Supp. 3d 342 (S.D.N.Y. 2014) .............................................................. 8

*Karlin v. IVG Am., Inc.*, 93 N.Y. 2d 282 (1999)........................................................................ 14

*Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013)................................................................. 8

*Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ........................ 4

*Liberman v. Gelstein*, 80 N.Y.2d 429 (1992) ............................................................................. 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)................................... 3

*Merck Eprova AG v. Brookstone Pharmaceuticals, LLC*, 920 F.Supp.2d 404
      (S.D.N.Y. 2013) .................................................................................................................. 13

*Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 24 (2d Cir. 2014)................................................ 12

*Nabisco v. Warner-Lambert Co.*, 220 F. 3d 43 (2d Cir. 2000)..................................................... 3

*New York Times v. Sullivan,* 376 U.S. 254 (1964)..................................................................... 16

*November v. Time, Inc.*, 13 N.Y.2d 175 (1963)......................................................................... 15

*OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F.Supp.2d 176 (W.D.N.Y. 2000)............................... 7

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) ............................................................. 14

*Pirone v. MacMilian, Inc.*, 894 F.2d 579 (2d Cir. 1999) ............................................................ 8

*Planned Parenthood Fed'n of Am., Inc. v. Bucci*, 1997 WL 133313,
      (S.D.N.Y. Mar. 24, 1997) ..................................................................................................... 7

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) ....................................... 7

*S.C. Johnson & Son, Inc. v. Clorox Co*, 241 F.3d 232 (2d Cir. 2001).................................... 3, 4

*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995)................................... 14

*Star Indus., Inc. v. Bacardi & Co. Ltd*, 412 F.3d 373 (2d Cir. 2005) ..................................... 7, 11

*Starbucks Corp. v Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009).............................. 8

*Stephano v. News Group Publications, Inc.*, 64 N.Y.2d 174 (1984) ......................................... 13

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F.Supp.2d 510 (S.D.N.Y. 2009)............... 4 , 6, 14

*Stutman v. Chem. Bank*, 95 N.Y.2d 24 (2000)........................................................................... 13

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) ................................. 5

*Western World Ins. Co. v. Stack Oil*, 922 F.2d 118 (2d Cir. 1990) ............................................. 3

*Yesner v. Spinner*, 765 F.Supp. 48 (E.D.N.Y. 1991) ..................................................... 15

**<u>Statutes</u>**

15 U.S.C. § 1125(a)(1)..................................................................................................... 5

15 U.S.C. § 1127.............................................................................................................. 5

Fed.R.Civ.P. 56............................................................................................................... 4

N.Y. Civil Rights Law § 51 ........................................................................................... 15

**<u>Treatises</u>**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
§ 28:15 (4th ed.1996).............................................................................................. 6

Plaintiffs submit this Memorandum of Law in Support of their motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment in their favor and against defendants SCE Group, Inc. d/b/a Sin City Cabaret and 21 Group, Inc. d/b/a Show Palace Gentlemen's Club (collectively, "Defendants").

## STATEMENT OF UNDISPUTED FACTS[1]

Each Plaintiff is a successful model and/or actress who earns her livelihood promoting her image, likeness and/or identity (collectively, "Image") to select clients, commercial brands, and media and entertainment outlets. (SOUF, ¶¶ 1, 9, 13, 17, 21, 25, 29, 33, 37, 41, 45, 49, 53, 57, 61, 65, 69, 73, 77, 81, 85.)[2] Each Plaintiff relies on her professional reputation for modeling, acting, hosting and other professional opportunities, has worked to establish herself as reliable, reputable, and professional, and it is each Plaintiff's reputation and status in the modeling industry, and the attendant notoriety each has achieved, that allows and ensures that each Plaintiff will continue to book jobs. (SOUF, ¶ 2.) In furtherance of her career, each Plaintiff seeks to control the use and dissemination of her image, is consulted on and participates in the negotiation, vetting and selection of modeling, acting, brand spokesperson or hosting engagements, and each has been vigilant in building and protection her brand from harm, taint, or other diminution. (SOUF, ¶ 3.) In all instances of commercial marketing and promotion of her image, each Plaintiff has negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions, and for agreed upon compensation. (SOUF, ¶ 4.)

[1] Plaintiffs hereby respectfully incorporate by reference all undisputed facts, and definitions, set forth in their Statement of Undisputed Facts ("SOUF"), filed pursuant to Local Rule 56.1 and submitted herewith, including the definition of "Plaintiffs" set forth therein. In addition, Plaintiffs respectfully incorporate by reference herein the facts set forth in the declaration of each Plaintiff submitted herewith wherein each Plaintiffs testifies, *inter alia*, concerning the details of her modeling careers, and the fact that she never consented to Defendants use of her Image for any purpose, including advertising. *See* January 25, 2019 Declaration of John V. Golaszewski ("Golaszewski Decl."), Exs. B-V.

[2] As set forth in her accompanying declaration and the SOUF, plaintiff Brittany Wilcox is not a professional model. (SOUF, ¶ 89.)

Defendants own two strip clubs, Show Palace Gentlemen's Club in Long Island City, Queens, and Sin City Cabaret, located in the Bronx, New York (collectively, the "Strip Clubs.") (SOUF, ¶ 93, 95.)[3] It is undisputed: (1) that no Plaintiff has ever been employed by, contracted with or has otherwise given permission or consent to Defendants to use her Image to advertise, promote, market or endorse Defendants' Strip Clubs (SOUF ¶¶ 5-6; 100); and, (2) that no Plaintiff was ever offered or paid any compensation by Defendants for the use of her Image to promote the Strip Clubs. (SOUF, ¶¶ 7; 101.) Despite this, and as set forth and depicted in Exhibits A through U of the Complaint ("Compl."), Defendants used one or more Image of each Plaintiff to advertise and promote the Strip Clubs' commercial activities. (SOUF, ¶8, and Ex. A thereto.) 21 Group used, advertised, created, printed and distributed the Images of Canas, Bugciaga, Mayes, Hinton, Krupa, Wilcox, Rockwell, Underwood, Monzikova, Weber, Berkovitch, Guerra, Pepaj, Selby, Voronina, Gaxiola, Vickers, Rosario, Skinner, and Whitten in its promotions for Show Palace. (SOUF, ¶¶94), and Defendant SCE Group has used, advertised, created, printed and distributed the Images of Gibson, Underwood, Canas, Burciaga, and Mayes in its advertising for Sin City. (SOUF, ¶¶ 97.)

## ARGUMENT

### I.     STANDARD ON SUMMARY JUDGMENT

If the record shows there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment must be entered. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A "genuine issue" exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor. *Nabisco v.*

---

[3] In or around July 2017, after this litigation was commenced, Sin City's liquor license was revoked, and it thereafter closed. (SOUF, ¶ 96.)

*Warner-Lambert Co.*, 220 F. 3d 43, 45 (2d Cir. 2000). Though all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion. *Western World Ins. Co. v. Stack Oil*, 922 F.2d 118, 121 (2d Cir. 1990); *see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (non-moving party must do more than merely show "some metaphysical doubt" as to material facts in order to escape summary judgment.)

## II.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT I OF THE COMPLAINT FOR VIOLATION OF THE LANHAM ACT

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in commerce … against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S.23, 28 (2003) (quoting 15 U.S.C. § 1127). "Section 43(a) of the Lanham Act proscribes false designations of origin or false or misleading descriptions of fact in connection with any goods in commerce that are likely to cause confusion or that misrepresent the nature, characteristics, qualities, or geographic origin of the goods." *S.C. Johnson & Son, Inc. v. Clorox Co*, 241 F.3d 232, 238 (2d Cir. 2001). *See also, Dastar*, 539 U.S. at 28 ("As originally enacted, § 43(a) created a federal remedy against a person who used in commerce either 'a false designation of origin, or any false description or representation' in connection with 'any goods or services.'" (quoting 60 Stat. 441)).

As set forth therein, Section 43(a) prohibits the use of:

> any word, term, name, symbol, or device, or any combination thereof … which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person….

15 U.S.C. § 1125(a)(1). Section 43(a) "specifically defines misrepresentation causing confusion as to affiliation, association or sponsorship as infringing activity," (*Famous Horse, Inc. v. 5th*

*Ave. Photo, Inc.*, 624 F.3d 106, 109 (2d Cir. 2010) *abrogated on other grounds by, Lexmark*

*Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)) and is "an appropriate

vehicle" for, *inter alia,* "the assertion of claims of falsely implying the endorsement of a product

or service by a real person." *Albert v. Apex Fitness, Inc.*, No. 97-cv-1151(LAK), 1997 WL

323899, at *1 (S.D.N.Y. Jun 13, 1999) (quoting J. Thomas McCarthy, *McCarthy on Trademarks

and Unfair Competition* § 28:15 (4th ed.1996)). *See also, Allen v. Nat'l Video, Inc.*, 610 F.Supp.

612, 626 (S.D.N.Y. 1985) (Lanham Act's "prohibitions … have been held to apply to misleading

statements that a product or service has been endorsed by a public figure.").

    In the Second Circuit, to prevail on a claim under section 43(a) a plaintiff must

demonstrate the defendant: "(1) made a false or misleading representation of fact; (2) in

commerce; (3) in connection with goods and services; (4) that is likely to cause consumer

confusion as to the origin, sponsorship, or approval of the goods or services." *Burck v. Mars*, 571

F.Supp.2d 446, 455 (S.D.N.Y. 2008).  "The modern test for infringement is whether the

defendant's use [is] likely to cause confusion not just as to source, but also as to sponsorship,

affiliation or connection." *Int'l Information Sys. Sec. Certification Consortium, Inc. v. Security

University, LLC*, 823 F.3d 153, 161 (2d Cir. 2016).

### A. There is No Issue of Material Fact as to Whether False or Misleading Representations of Fact Were Made in the Advertisements

    "Two types of advertising claims are actionable under Section 43(a): (i) advertisements

that are false on their face, known as 'literally false' claims, and (ii) advertisements that, though

literally true, are likely to mislead and consumers, known as 'implied claims.'" *Stokely-Van

Camp, Inc. v. Coca-Cola Co.*, 646 F.Supp.2d 510, 525 (S.D.N.Y. 2009) (citing *S.C. Johnson*,

241 F.3d at 238). "Literal falsity claims encompass claims that an advertisement is 'false by

necessary implication.'" *Id.* (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144,

158 (2d Cir. 2007)). Under this doctrine, "[i]f the words or images, considered in context, necessarily imply a false message, the advertisement is literally false and no extrinsic evidence of consumer confusion is required." *Id.* (citing *Time Warner*, 497 F.3d at 158).

*First*, Exhibits A-U to the Complaint are false on their face because Defendants never sought or obtained permission to use, alter and publish any Plaintiff's image (SOUF ¶ 5), no Plaintiff ever worked for or agreed to appear in advertisements for any Defendant (SOUF ¶ 6), and no Plaintiff was ever offered or paid any compensation by Defendants. (SOUF ¶ 7.) Though these facts alone establish that the subject advertisements are literally false, the advertising copy -- which was in all cases generated by Defendants (SOUF, ¶ 107) -- published alongside, within, or referencing the misappropriated Images underscores the falsity of Defendants' advertisements:

- Beside a misappropriated image -- one of five (5) -- of Jessica Burciaga published on the Sin City Instagram page, Defendants' wrote: "Sindustry Mondays are here!! Come celebrate the start of your week with **all of our hot new girls**!! Over 30 entertainers and the sexiest waitresses and bottle girls anywhere in NYC!!" (Compl., Ex. C-4) (emphasis added), clearly making the false statement to potential Sin City clientele that Ms. Burciaga was one of Sin City's "hot new girls;"

- Beside a misappropriated image – one of four (4) -- of Ursula Mayes published on the Sin City Instagram page, Defendants wrote: "Back to school party tonight. Come hang out with **my beautiful school girls**" (Compl., Ex. D-1) (emphasis added) clearly making the false statement to potential Sin City clientele that Ms. Mayes was one of Sin City's "beautiful school girls;"

- Beside a misappropriated image of Joanna Krupa holding playing cards published on the Show Palace Facebook page, Defendants' wrote: "LAP DANCE POKER! ONLY AT SHOWPALACE 42-50 21ˢᵗ street L.I.C. NY 11101 Each lap dance earns a playing card. THE BEST HAND WINS A FREE ALL NUDE ROOM WITH **ONE OF OUR BEAUTIFUL SHOWPALACE DANCERS**...." (Compl. Ex. F-2) (emphasis added), clearly making the false statement to potential Show Palace clientele that Ms. Krupa was one of the "beautiful Show Palace dancers" with whom they could potentially have a "free all nude room;"

- Beside a misappropriated image of Jamiellete Gaxiola published on the Show Palace Facebook page, Defendants' wrote: "SEXY BABES AND BASKETBALL!! What better place to watch than with the **most beautiful and**

**sexy girls in NYC**," (Compl., Ex. Q) (emphasis added), clearly making the false statement to potential Show Palace clientele that Ms. Gaxiola was one of Show Palace's "sexy babes" and one of the "most beautiful and sexy girls in NYC" who danced at Show Palace.

The exhibits to the Complaint are replete with examples of false advertising copy Defendants made the calculated decision to draft and publish beside the images of Plaintiffs they had already misappropriated. This was done to convey a false message to the public, and as such there is be no issue of fact that would preclude summary judgment as to each advertisement's literal falsity.

*Second*, even if the Court finds an issue of fact concerning whether the advertisements are false on their face, there is no such issue whether the advertisements are false by necessary implication because each advertisement necessarily implies the false message that: a) each Plaintiff is "affiliated, connected, or associated" with Defendants' product; b) each Plaintiff "sponsors or approves" Defendants' product; or c) that each Plaintiff is Defendants' product, *i.e.*, one of the women clientele of Sin City and Show Palace can pay to watch strip if they go to one of the Strip Clubs. There is no other reasonable way to interpret the subject advertisements, and because each advertisement necessarily implies a false message, they are each considered "literally false" in the Second Circuit. *Stokely-Van Camp*, 646 F.Supp.2d at 525.

*Third*, it is settled that the false or misleading representation of fact for Section 43(a) purposes may involve the "misleading statement[] that a product or service has been endorsed by a public figure," (*Allen*, 610 F.Supp. at 626) and thus even if the Court could not determine at this stage that the advertisements are literally false, they are nevertheless misleading under relevant authority and Plaintiffs thus meet their summary judgment burden for this reason as well.

**B. There is No Issue of Material Fact as to Whether the Advertisements Were Used in Commerce, and in Connection With Goods and Services**

Plaintiffs further submit there is no dispute as to whether these advertisements were used "in commerce" because Defendants published these Images on their social media pages on the internet as part of their advertising campaign. *See OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F.Supp.2d 176, 185 (W.D.N.Y. 2000) ("the national, and even international nature of the Internet itself makes defendants' use of plaintiffs' trademarks as a domain name a 'use in commerce' for purposes of the Lanham Act." (citing *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, 1997 WL 133313, at *3 (S.D.N.Y. Mar. 24, 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998), *cert. denied*, 525 U.S. 834 (1998). *See also, CJ Products, LLC v. Snuggly Plushez, LLC*, 809 F.Supp.2d 127, 158 (E.D.N.Y. 2011) ("there is no dispute that defendants' use of the mark to purchase AdWords to advertise its products for sale on the Internet constitutes 'use in commerce' under the Lanham Act."). Further, because Defendants advertisements were published on the internet to promote Defendants' two strip clubs, Plaintiffs' also submit there is material dispute whether the advertisements were used "in connection with goods and services." *See* Compl., Exs. A-U.

**C. There is No Issue of Material Fact as to Whether the Advertisements Were Likely to Cause Consumer Confusion**

Likelihood of confusion under the Lanham Act "includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection or identification." *Star Indus., Inc. v. Bacardi & Co. Ltd*, 412 F.3d 373, 383 (2d Cir. 2005) (citations omitted). To determine likelihood of confusion in the Second Circuit, a court will evaluate the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961), including: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by

developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013) (internal citation omitted).[4] "These factors are not applied mechanically -- rather, a court is to 'focus[ ] on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused.'" *Estate of James Oscar Smith, et ano. v. Cash Money Records, Inc.* 14-cv-2703, 2018 WL 2224993, at *7 (S.D.N.Y. May 15, 2018) (quoting *Starbucks Corp. v Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). Although "[n]ormally,… likelihood of confusion is a factual question, centering on the probable reactions of prospective purchasers of the parties' goods," (*Pirone v. MacMilian, Inc.*, 894 F.2d 579, 584 (2d Cir. 1999) "summary judgment may be appropriate whether the evidence leads to only one conclusion." *Jackson v. Odenat*, 9 F.Supp. 3d 342, 355 (S.D.N.Y. 2014).

     i.    <u>Strength of Plaintiffs' Trademarks</u>

The strength of trademark analysis strongly favors Plaintiffs because the uncontroverted evidence establishes that each Plaintiff is a successful model who over the course of many years has earned her livelihood promoting her image to select clients of her choosing, (SOUF, ¶¶ 1, 9, 13, 17, 21, 25, 29, 33, 37, 41, 45, 49, 53, 57, 61, 65, 69, 73, 77, 81, 85), and that each Plaintiff relies on her professional reputation to continue booking modeling, acting, hosting and other professional opportunities. (SOUF, ¶ 2.)[5]  Moreover, Plaintiffs enjoy social media fame in that

_____

[4] In a case as here where an individual is claiming her image, likeness and/or persona was used in commerce by a defendant to create confusion as to her sponsorship, affiliation, connection or identification with a product, the *Polaroid* factors the quality of the products and "bridging the gap" are often not considered.  *Jackson v. Odenat*, 9 F.Supp. 3d 342, 356 (S.D.N.Y. 2014).

[5] Because, as set forth in her accompanying declaration, plaintiff Brittany Wilcox is not a professional model, Plaintiffs acknowledge that the strength of mark factor does not favor Ms. Wilcox.

they have substantial followers on their social media accounts. *See, e.g.,* SOUF ¶¶ 33, noting Underwood has 14.7 million social media followers; SOUF ¶ 81, noting that Voronina has 4.3 million social media followers; SOUF ¶ 25, noting that Hinton has more than 4 million social media followers; SOUF ¶ 29, noting that has nearly 3.5 million social media followers; SOUF ¶ 13, noting that Burciaga has more than 1.8 million social media followers; SOUF ¶ 53, noting that Guerra has 2.4 million social media followers; SOUF ¶ 69. The operative inquiry on a strength of mark analysis whether there is intent to commercialize a trademark and evidence of that commercialization, and thus even without the significant and indisputable evidence concerning each Plaintiff's success as a model, this factor heavily favors Plaintiffs. *See, e.g. Fischer v. Forrest*, 286 F.Supp.3d 590, 612 (S.D.N.Y. 2018) (holding that the "strength of mark" factor favored plaintiff on *Polaroid* inquiry where plaintiff "has profitably marketed his product for a number of years.") (emphasis added); *Condit v. Star Editorial, Inc.*, 259 F.Supp.2d 1046 (E.D. Cal. 2003) ("a majority of circuits require a commercial interest in a mark, that is, at a minimum, a present intent to commercialize a mark," and noting that, to sustain a claim under Section 43(a) a plaintiff must "allege an existing intent to commercialize an interest in identity."); *Arnold v. Treadwell*, 642 F.Supp.2d 723, 734 (E.D. Mich. 2009) (noting that celebrity status is not required to maintain an action under Section 43(a) as the Lanham Act "is designed to protect reasonable commercial interests in marks, including identities.").

Because the documentary evidence and testimony from each Plaintiff establishes that each has profitably marketed her "product" (*i.e.*, herself) for a number of years, the strength of mark factor favors Plaintiffs.

ii.    Similarity of the Marks

The "similarity of marks" factor likewise weighs heavily in Plaintiffs' favor because nothing in the record creates any potential dispute that Defendants used actual pictures of Plaintiffs in the Sin City and Show Palace advertisements. *See Jackson*, 9 F.Supp. 3d at 358 (finding that similarity of the marks favored plaintiff where "[d]efendants do not dispute that they used actual pictures" of plaintiff.)

iii.    Proximity of the Products and Their Competitiveness With One Another

The proximity of products and competitiveness factor also strongly favors Plaintiffs because although Plaintiffs and Defendants are not in the same business, they are competitors in that they vie for the same "dollar" by seeking to attract customers and/or clientele by and through the use of the image of a beautiful woman.  Moreover, the crux of Plaintiffs' allegations is that their Images were misappropriated and used on Defendants' social media, and the uncontroverted evidence demonstrates that the majority of the Plaintiffs have massive social media followings – *i.e.* they target the same or similar market by and through the use of social media and are competitors in this regard as well.  *See, supra,* Section II(C)(i) (discussing Plaintiffs' social media followers). Plaintiffs thus submit that they are competitors of Defendants and this *Polaroid* factor also weighs heavily in Plaintiffs' favor.

iv.    Evidence that the Mark was Adopted in Bad Faith

Not only is there no dispute that no Plaintiff was ever hired by Defendants, there is also no dispute that Defendants knew they had no contracts or releases with any Plaintiff (SOUF, ¶¶ 100, 104) and never saw or requested any contracts between any third-party graphic designer and any Plaintiff (SOUF ¶ 102.)  When asked how Show Palace's manager went about procuring images for use in advertising, Defendants' 30(b)(6) witness testified as follows:

> The process is that he goes on Google, copies or pastes or screenshots, one way or the other, don't know how, obtains the image and posts it on Facebook doing a Google search based on a theme.

(SOUF, ¶ 109.) Defendants' corporate representative, who oversaw all marketing and social media marketing at the Strip Clubs, also testified that although he knew Show Palace's manager was taking images off the internet and using them in advertising, he never had any conversations with this manager about securing the rights to those images because Defendants:

> had no reason to think we had to obtain any rights on any image that's free on the Internet because there's no name, there's no logo on it that says do not use image or copyright or a red or an "R" or any of the sort. It's images on the internet that anybody could take a screenshot or download or copy and paste, et cetera.

(SOUF ¶¶ 110-112.) Defendants' actions are tantamount to bad faith and their callous, reckless -- and, vitally, repeated -- misappropriation of Plaintiffs' Images and disregard of Plaintiffs' rights strongly favors Plaintiffs on this *Polaroid* factor. *See Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113-14 (2d Cir. 1988) (noting that attorneys' fees may be awarded under 15 U.S.C. § 1117(a) when a party acts "willfully, intentionally and with a callous and reckless disregard of plaintiff's rights.").

v.     Sophistication of Consumers in the Relevant Market

Although "[c]onsumer sophistication may be proved by direct evidence such as expert opinions or surveys…. [] in some cases a court is entitled to reach a conclusion about consumer sophistication based solely on the nature of the product or its price." *Star Indus.,* 412 F.3d at 390. Defendants generate revenue by attracting individuals to their Strip Clubs, and selling them alcohol, food, and dances with the strippers who work there. Thus, potential clientele go to Sin City or Show Palace for the purpose of seeing women undress and dance. Defendants' corporate representative conceded that one of the purposes of misappropriating and using Plaintiffs' in the

Strip Clubs' advertising was to convey to potential patrons that attractive women could be seen stripping at Sin City and Show Palace:

> Q:    Was the reason [the Plaintiffs' Images were used] was to indicate to the public that women who looked like these women were going to be dancing at your clubs?
>
> ….
>
> A:    I guess my answer would be we use images of pretty people, that we have pretty people in the club.

(SOUF, ¶ 118.) For individuals who choose to spend their entertainment dollar attending strip clubs, its stands to reason that the more objectively attractive a potential customer believes the women who dance at Sin City and Show Palace to be, the greater the likelihood that individual will attend Sin City or Show Palace as opposed to one of its competitors in the strip club space, and thus "consumer sophistication" in this context is focused on the desire of potential patrons to see attractive women.  Plaintiffs submit that, as acknowledged by Defendants' corporate representative, the Defendants' misappropriation and publication of 21 professional and in some cases world-renowned models was intended to confuse these patrons and convince them to attend Sin City or Show Palace.  This factor also strongly favors Plaintiffs.

In light of the incontrovertible evidence set forth above, Plaintiffs are entitled to summary judgment on Count I of the Complaint for violation of Section 43(a) under the Lanham Act. [6]

---

[6] As noted, *supra*, when a court finds that an advertisement is literally false, or false by necessary implication, "no extrinsic evidence of consumer confusion is required." *Stokely-Van Camp,* 646 F.Supp.2d at 525 (citations omitted). *See also, Merck Eprova AG v. Gnosis S.p.A.,* 760 F.3d 247, 259 (2d Cir. 2014) ("In cases where … the district court has found literal falsity, we have never required a finding of extrinsic evidence of injury to consumers or to the plaintiff."). Thus, in light of the literal falsity of each of the 41 advertisements, the Court should dispense with the actual confusion *Polaroid* factor.

### III.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT II OF THE COMPLAINT FOR VIOLATION OF N.Y. CIVIL RIGHTS LAW §§ 50-51

Section 51 of the New York Civil Rights Act "provides a cause of action for both injunctive relief and monetary redress when, without his or her written consent, a person's 'name, portrait, or picture is used within this state for advertising purposes or for the purposes of trade.'" *Brinkley v. Casablancas*, 80 A.D.2d 428, 431 (1st Dep't 1981) (citing N.Y. Civil Rights Law § 51). *See also, Stephano v. News Group Publications, Inc.*, 64 N.Y.2d 174, 183 (1984) ("By its terms the statute applies to any use of a person's picture or portrait for advertising or trade purposes whenever the defendant has not obtained the person's written consent to do so."). Because there is no dispute that no Plaintiff ever consented -- in writing or otherwise -- to any Defendant or Strip Club's use of her Image, (SOUF, ¶ 6), that Defendants never sought such consent (SOUF, ¶ 5), and that the Images at issue were used in for commercial purposes in a variety of Defendants' advertisements and thus were by definition used for "advertising purposes or for the purposes of trade," there is no issue of material fact which would preclude summary Plaintiffs' favor on their claim under Civil Rights Law §§ 50-51.

### IV.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT III OF THE COMPLAINT FOR VIOLATION OF NEW YORK'S DECPTIVE TRADE PRACTICE ACT, N.Y. G.B.L. § 349

"A plaintiff bringing a claim of deceptive trade practices under Section 349 'must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'" *Merck Eprova AG v. Brookstone Pharmaceuticals, LLC*, 920 F.Supp.2d 404, 425 (S.D.N.Y. 2013) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000).  Section 349 is "a broad, remedial statute and … the provision creating a private right of action employs

expansive language," (*Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA, Inc.* 3 N.Y. 3d 200, 207 (2004)), pursuant to which the "critical question" is "whether the matter affects the public interest in New York." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). It is well-settled that Section 349 "appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad," as "[t]he reach of [this] statute [] provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in [New York]." *Karlin v. IVG Am., Inc.*, 93 N.Y. 2d 282, 290-91 (1999) (internal quotations omitted). Thus, the operative question under section 349 is whether the deception complained of is "likely to mislead a reasonable consumer acting reasonably under the circumstances," (*Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)), and "the requirement that defendants engage in consumer-oriented conduct has been construed liberally." *Aghaeepour v. Northern Leasing Sys., Inc.,* 14 Civ. 5449(NSR), 2015 WL 7758894, at * 14 (S.D.N.Y. Dec. 1, 2015) (citations omitted)). As set forth by the New York Court of Appeals, the goal of the statute is to "secure an honest market place where trust, and not deception, prevails." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (2002) (Internal quotations omitted).

As discussed *infra* with respect to Plaintiffs' claim under the Lanham Act claim, that Defendants' on-line advertising campaign was "consumer-oriented" is inarguable, as is the fact the literally false advertisements were likely to mislead a reasonable consumer. *See Stokely-Van Camp,* 646 F.Supp.2d at 525. As such, Plaintiffs are entitled to summary judgment on their claim under N.Y. G.B.L. § 349 based on Defendants' deceptive acts and practices.

**V.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT IV FOR DEFAMATION**

Defamation is defined in New York as "the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him…." *Dillon v. City of New York*, 261 A.D.2d 34, 37 (1st Dep't 1999). A plaintiff "must establish five elements to recover in libel: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." *Celle v. Filipino Reporters Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). Further, a writing which tends to disparage a person in the way of his office, profession or trade is defamatory per se and does not require proof of special damages." *Id.* at 179 (citations and internal quotations omitted).   *See also, Yesner v. Spinner*, 765 F.Supp. 48, 52 (E.D.N.Y. 1991)  ("It has long been the law in New York that a defamatory statement that is a direct attack upon the business, trade or profession of the plaintiff is considered defamation 'per se,' and therefore actionable without any proof of special damages."); *November v. Time, Inc.*, 13 N.Y.2d 175, 1777 (1963)  ("Plaintiff is a professional man. If, on their face, they (the words) are susceptible in their ordinary meaning of such a construction as would tend to injure him in that capacity, they are libelous per se and the complaint, even in the absence of allegation of special damage, states a cause of action.") (internal quotation marks and citations omitted)).

The undisputed facts establish that Defendants' widely published each Plaintiff's image via the internet, including on Defendants' owned and controlled websites and social media. (Compl., Ex. A-U.)  It is also undisputed that the offending Images are false, because no Plaintiff ever worked as a stripper at any of the Strip Clubs or agreed to endorse same by appearing in

their advertisements. (SOUF ¶¶ 5-7.) Moreover, Defendants and their owner were well-aware that an entity may not use an individual's image for advertising purposes without consent. (SOUF ¶ 128.) As such, and at minimum, Defendants exhibited a reckless disregard as to the falsity of the representations made in their advertisements. *See Liberman v. Gelstein*, 80 N.Y.2d 429, 438 (1992) (noting that under the malice standard of *New York Times v. Sullivan,* 376 U.S. 254, 280 (1964) and its progeny, a plaintiff must demonstrate that the "statements [were] made with [a] high degree of awareness of their probable falsity…. In other words, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [the] publication." (Internal quotations and citations omitted).

Finally, Plaintiffs are entitled to a judgment on their defamation *per se* claim because it is imputing that a professional model and/or actress is a stripper or is otherwise affiliated with a strip club would tend to "damage, harm and devalue" the model's career, and could serve as a deterrent to commercial brands, who would not want to be associated with her. Thus, because Defendants' false representations in the Strip Clubs' advertisements rise to the level of defamation *per se*, damages are presumed. *See Celle*, 209 F.3d at 179. Even if Plaintiffs' damages were not presumed, Plaintiffs suffered actual damages by being deprived, at minimum, of the compensation would have been obligated to pay them to be in the Sin City or Show Palace advertisements. Thus, since there is no issue of material face which would preclude judgment in Plaintiffs' favor as to Count IV of the Complaint for defamation/defamation *per se*, summary judgment is appropriate.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant its motion

for summary judgment on each count of the Complaint discussed herein and grant such other and

further relief as this Court deems just and proper.

Dated:  New York, New York
        January 25, 2019

**THE CASAS LAW FIRM, P.C.**

By: <u>/s/ John V. Golaszewski</u>
    John V. Golaszewski, Esq.
    1745 Broadway, 17th Floor
    New York, New York
    T: 646.872.3178
    F: 855.220.9626

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of January, 2019, the foregoing was electronically filed with the U.S. District Court Clerk, Southern District of New York, by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

<u>/s/ John V. Golaszewski</u>

John V. Golaszewski, Esq.
Casas Law Firm, P.C.
1750 Broadway, 15th Floor
New York, New York 10019
Tel: (646) 872-3178
john@casaslawfirm.com

*Attorneys for Plaintiffs*